Case 4:20-cv-00188-MW-MAF   Document 20   Filed 07/20/20   Page 1 of 14

Page 1 of 14

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**ZOLTAN TAMAS,**

    Petitioner,

vs.                                              Case No. 4:20cv188-MW-MAF

**WILLIAM BARR, et al.,**

    Respondents.

_____/

## REPORT AND RECOMMENDATION

Petitioner, represented by counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Southern District of Florida on March 11, 2020.  ECF No. 1.  Because Petitioner was detained at the Wakulla Count Detention Facility which is within the territorial jurisdiction of the Northern District of Florida, the case was transferred to this Court.  ECF Nos. 11-12.

A notice of appearance of counsel was filed for Respondents, ECF No. 15, and a response to the petition was filed on May 8, 2020.  ECF No. 16.  Petitioner filed a notice of change of address, ECF No. 18, advising that he has been transferred to the Broward Transitional Center.  That

change in the location of Petitioner's detention does not defeat this Court's jurisdiction. On May 20, 2020, Petitioner filed a reply, ECF No. 19, to the response. This petition is ready for a ruling.

**The petition, ECF No. 1**

The petition was filed on March 11, 2020. ECF No. 1. Petitioner is a native and citizen of Romania who entered the United States "on June 20, 2011, and on the same day was granted Lawful Permanent Resident status." ECF No. 1 at 4. Petitioner "is married and has two children; all three individuals are naturalized U.S. citizens." *Id.*

Petitioner applied for naturalization in 2018. *Id.* at 4. He appeared for an interview concerning his application in June of 2018, and was detained by ICE. *Id.* Petitioner has remained in detention since then, and was issued a notice to appear which alleged that he was removable because: (1) he was inadmissible at the time of entry "as an alien having been convicted of a crime involving moral turpitude" and; (2) because of a conviction for an aggravated felony involving fraud or deceit. *Id.* at 5. The petition explained that the charges of removability were "based on an in absentia conviction in Romania, issued after his immigration to the United States, alleging that he had staged traffic accidents for the purpose of

defrauding insurance companies." *Id.* The petition acknowledges that Petitioner "was convicted in Romania of [those] criminal charges in absentia." *Id.*

Petitioner was ordered removed and filed an appeal with the Board of Immigration Appeals ["BIA"]. *Id.* at 5. The BIA dismissed Petitioner's appeal on February 1, 2019, and Petitioner asserts that is the date on "which his order of removal became administratively final." *Id.*

On February 19, 2019, Petitioner filed a petition for review with the Eleventh Circuit Court of Appeals. *Id.* at 5. On March 1, 2019, Petitioner filed a motion to reopen with the BIA. *Id.* at 6. Additionally, Petitioner filed a request for stay of removal with the BIA and an "emergency motion for stay of removal" with the Eleventh Circuit on April 2, 2019. *Id.* On April 4, 2019, the BIA granted Petitioner's request for a stay of removal, although the Eleventh Circuit denied the request on that same day. *Id.* Petitioner's petition for review before the Eleventh Circuit has been "held in abeyance while the Board of Immigration Appeals reviews the petitioner's pending motion to reopen." *Id.* The motion to reopen is still pending before the BIA.

Petitioner alleges that he had been "detained under 8 U.S.C. § 1231(a)(6) for one year six months and nine days." *Id.* at 7. Petitioner

seeks release from detention pursuant to <u>Zadvydas v. Davis</u>, arguing that he "has been held without an individualized determination that he warrants continued, prolonged, and indefinite detention." *Id.*

**The Response, ECF No. 16**

Respondents contend that Petitioner is not entitled to release under <u>Zadvydas</u> because Petitioner has not been detained more than six months beyond the final order of removal. ECF No. 16 at 8. Respondents contend that the petition was filed prematurely as Petitioner had only been detained for 18 days after the removal order became final. *Id.* at 11-12. Additionally, Respondents point out that "the stay of removal has been in effect since April 4, 2019, and the motion to reopen remains pending." *Id.* at 12. Thus, it is argued that the Attorney General has been unable to remove Petitioner because of Petitioner's actions.

Moreover, Respondents point out that Petitioner has failed to allege or demonstrate that there is no significant likelihood of removal. *Id.* at 13. Respondents have shown through the declaration of Christopher C. Palazzo, a Deportation Officer employed by ICE, that after the BIA dismissed Petitioner's appeal, a travel document was requested from the Romanian embassy on February 13, 2019. ECF No. 16-2 at 2. The

request for a travel document was granted on March 6, 2019, and "Petitioner was scheduled to be removed on April 9, 2019." *Id.* After the BIA granted a stay of removal, Petitioner's scheduled removal plans were cancelled. *Id.* Respondents have shown that Petitioner had been "scheduled for a removal flight on April 9, 2019." ECF No. 16 at 13 (citing to Ex. 2).

**The Reply, ECF No. 19**

Petitioner filed a reply to address the arguments presented in Respondent's response. Petitioner contends that the removal order "became administratively final upon the Board of Immigration Appeals (BIA) affirming a determination that an alien is removable and ordering removal." ECF No. 19 at 3 (citing 8 U.S.C. § 1101(a)(47)(B)). Thus, Petitioner contends that when the BIA dismissed his "appeal on February 1, 2019, his removal order became administratively final." *Id.* Petitioner contends that the petition was not prematurely filed, but was filed after he had been in detention for 1 year, 3 months, 17 days, and "not 18 days" as argued by Respondents. *Id.* Petitioner asserts that filing a motion to reopen with the BIA does not toll the removal period. *Id.* at 4.

Further, Petitioner contends that he has not acted to prevent his removal by filing a motion which is permissible "under the Constitution, the INA, and administrative law." *Id.* at 5-6.  Petitioner argues that taking an action which is permissible under immigration law cannot be deemed to be an act that prevents or hinders removal.  *Id.* at 6.

Finally, Petitioner contends that removal is unlikely because of impacts from the COVID-19 pandemic and states that "Romania has suspended travel into the country from the U.S." *Id.* at 9-10.  Petitioner argues it "is unclear" whether he would "even be allowed into Romania at this time if the stay was lifted and his removal order enforced." *Id.* at 10.  Petitioner contends that "even f the BIA denies his motion to reopen he intends to continue contesting his removal before the Eleventh Circuit Court of Appeals because he wants to remain in the United States with his U.S. citizen family, including his terminally ill daughter." *Id.*

**Analysis**

Petitioner is not challenging the final order of removal in this petition.  Rather, Petitioner seeks release from detention pursuant to <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).  This Court has jurisdiction over such a petition.  28 U.S.C. § 2241.

To the degree Respondents contend this petition was prematurely filed, that argument should be rejected. Immigration law defines the "removal period" as beginning *on the latest* of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). The removal order has not been judicially reviewed and Petitioner has not been released from confinement. The legal question is whether the order of removal is still administratively final.

It is undisputed that Petitioner was ordered removed by an immigration judge and that the BIA dismissed his appeal on February 1, 2019. Both Petitioner and Respondents state that "the order of removal became administratively final" on that date - February 1, 2019. ECF No. 16 at 6; ECF No. 1 at 5. However, Petitioner's filed his motion to reopen with the BIA on March 1, 2019. That motion is still pending before the BIA. The question is whether that filing effectively rendered the administrative order *non-final*.

"In the deportation context, a final 'order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'" Nasrallah v. Barr, 140 S. Ct. 1683, 1691 (June 1, 2020) (citing § 1101(a)(47)(A)). "[T]he Immigration and Nationality Act permits a person one motion to reopen, "a form of procedural relief that asks the Board to change its decision in light of newly discovered evidence or a change in circumstances." Dada v. Mukasey, 554 U.S. 1, 12, 14, 128 S. Ct. 2307, 171 L. Ed. 2d 178 (2008) (internal quotation marks omitted) (quoted in Guerrero-Lasprilla v. Barr, 140 S. Ct. 1062, 1067, 206 L. Ed. 2d 271 (2020)).  A motion to reopen "must usually be filed 'within 90 days of the date of entry of a final administrative order of removal.'" 8 U. S. C. § 1229a(c)(7)(C)(i) (quoted in Guerrero-Lasprilla, 140 S. Ct. at 1067, 206 L. Ed. 2d 271).  In this case, the motion was timely filed.

The Supreme Court has held that "a deportation order is final, and reviewable, when issued.  Its finality is not affected by the subsequent filing of a motion to reconsider."  Stone v. I.N.S., 514 U.S. 386, 405–06, 115 S. Ct. 1537, 1549, 131 L. Ed. 2d 465 (1995).  Accordingly, the motion to reopen is the equivalent of a motion to reconsider and does not alter the

Page 9 of 14

legal effect of the order of removal.  It is still an administratively final order of removal.

This case was filed on March 11, 2020.  ECF No. 1.  That is more than one year from entry of the final order of removal.  This petition was not prematurely filed.

Further, the fact that Petitioner is seeking to challenge the order of removal by following the procedures provided for in immigration law does not mean that Petitioner is hindering or otherwise interfering with removal efforts.  Petitioner has used the very process which is expressly authorized by immigration law; doing so should not be used to justify prolonged or indefinite detention.

In <u>Zadvydas v. Davis</u>, the United States Supreme Court was asked to decide whether 8 U.S.C. § 1231(a)(6) authorized indefinite detention of a removable alien.[1]  The Court held that the continued detention of legal permanent aliens beyond the mandated 90-day removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States."  *Id.*,

---

[1] Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  8 U.S.C. § 1231(a)(1)(A).

Case No. 4:20cv188-MW-MAF

at 689, 121 S. Ct. at 2498.  The Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id.*, at 699, 121 S. Ct. at 2503.  For the sake of uniform administration by the federal courts, the Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'"  Clark v. Martinez, 543 U.S. 371, 125 S. Ct. 716, 722, 160 L. Ed. 2d 734 (2005) (quoting Zadvydas, 533 U.S. at 701, 121 S. Ct. at 2505).

In Clark v. Martinez, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[2]  The Court found no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for a resident alien.  Clark, 543 U.S. at 386, 125 S. Ct. at 727; *see also* Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir.

---

[2] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6) (quoted in Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005)).

Case No. 4:20cv188-MW-MAF

2005).  Thus, the six month presumptively reasonable period of time is the same for both admitted and inadmissible aliens.  Benitez, 402 F.3d at 1135.  Accordingly, under Clark and Zadvydas, when an alien shows he has been held longer than the presumptively reasonable removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted.  Clark, 543 U.S. at 386-387, 125 S. Ct. at 727; Benitez, 402 F.3d at 1135 (relying on Clark to hold that an inadmissible alien must be released and paroled into the country if he has been detained beyond the six month removal period and his removal is not reasonably foreseeable).[3]

Zadvydas established a burden-shifting analysis for reviewing § 2241 habeas petitions.  After the presumptive six month removal period has expired, an alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  Zadvydas, 533 U.S. at 701, 121 S. Ct. at 2505.  Thereafter, "the Government must respond with evidence sufficient to rebut that showing."  Id.

Here, Petitioner alleged in the § 2241 petition that his continued detention was unconstitutional, prolonged, and indefinite.  ECF No. 1 at 7.

---

[3] An alien must be detained during the "removal period."  8 U.S.C. § 1231(a)(2).

However, Petitioner did not show that it was not significantly likely to occur in the reasonably foreseeable future. The petition, instead, revealed that a travel document request was granted and Petitioner was scheduled to be removed. Petitioner did not meet his burden under <u>Zadvydas</u>.

Moreover, Respondents have shown that Petitioner's removal is likely to occur. Within two weeks of the order of removal becoming administratively final, a travel document request was presented to the Romanian embassy. The request was granted on March 6, 2019, and Petitioner was scheduled to be removed on April 9, 2019. ECF No. 16-2 at 2. The BIA entered a stay of removal on April 4, 2019; otherwise, Petitioner's removal would have occurred nearly a year before this petition was filed.

This is not a case where removal is not possible because travel documents cannot be obtained. It is not the case that Petitioner failed to provide documents to prove his identity or citizenship. It also does not appear to be the case that Petitioner is acting in bad faith to thwart his removal, notwithstanding Respondents' argument "that he is, in fact, trying to thwart his removal, perhaps to avoid prison" in Romania. ECF No. 16 at

14. Petitioner is utilizing the procedures made available in federal immigration law and he should not be penalized for doing so.

Nevertheless, the petition is insufficient to demonstrate entitlement to relief because Petitioner has not shown that his removal is not likely to occur in the reasonably foreseeable future. Petitioner did submit an exhibit with his reply which addresses the impact of COVID-19 on detainees to Romania. ECF No. 19-4. That document shows that "the Government of Romania suspended all commercial flights to and from . . . the U.S. . . . for 14 days starting May 15." *Id.* at 3. That time limitation has now expired. It also does not demonstrate that a chartered flight from the U.S. would not be possible. In light of the showing that Romania has previously issued a travel document, it appears that Petitioner's removal is significantly likely to occur. The petition should be denied.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that the petition for issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1, be **DENIED** and this case be dismissed.

**IN CHAMBERS** at Tallahassee, Florida, on July 20, 2020.

   S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**